J-A23006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TODD E. FLETCHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREN L. FLETCHER | : | No. 1619 MDA 2021 |

Appeal from the Order Entered October 12, 2021
In the Court of Common Pleas of Centre County Civil Division at No(s):
2019-1018

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 02, 2022**

Todd E. Fletcher ("Husband") appeals from the October 12, 2021 order, which provided for the equitable distribution of marital assets in relation to Husband's divorce from Karen L. Fletcher ("Wife").[1] We affirm the trial court's distribution order and remand for further proceedings.

We recite the following relevant background. Husband and Wife married in 1993 and had one child together. Of relevance to this appeal, Wife purchased a home in Blair County, Pennsylvania, prior to their marriage.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although Husband appeals from the equitable distribution order, it was entered contemporaneously with the divorce decree and, therefore, this appeal is properly before us. ***See Verdile v. Verdile***, 536 A.2d 1364, 1366 (Pa.Super. 1988) (noting that a pre-divorce order of equitable distribution is interlocutory and unappealable because trial courts "are empowered to order equitable distribution only contemporaneously with or subsequent to a decree in divorce") (citation omitted).

Thereafter, Wife deeded the home to Wife and Husband jointly, making it the marital residence. The two separated in 2018 when Husband moved out. Wife remained in the marital residence. Of note, the value of the marital residence is exceeded by the significant debt attached to it. Briefly stated, there is a lien from a collections case against Wife and several mortgages obtained by Husband and Wife: a first mortgage, which remained outstanding at the time of these events; a second mortgage, which had been satisfied; and a third and fourth mortgage, which were in default and had been reduced to judgments.

In 2019, Husband filed for divorce. During the divorce proceedings, Husband agreed to make payments on the first mortgage in lieu of alimony *pendente lite*. The court held a hearing on June 10, 2021, at which Husband and Wife both testified and presented various exhibits. The trial court entered a divorce decree on October 12, 2021. Simultaneously, it entered the order appealed from, which provided for equitable distribution of the marital estate. Of relevance to this appeal, it awarded Wife the marital residence and alimony. Specifically, Wife is to receive alimony in the amount of $1,100 per month until April 2025. Beginning in April 2025, Wife will begin receiving her pension payments and alimony will be reduced to $800. Alimony will continue at that rate until Wife begins to collect her share of Husband's pension.

Husband timely appealed from the distribution order.[2]  Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband presents the following issues for our review:

> I.    Whether the trial court erred in failing to require Wife to pay the mortgage for so long as she continues to reside in the marital residence and/or hold Husband harmless for payments to the mortgage after the date of the divorce decree.
>
> II.   Whether the trial court erred in awarding Wife alimony, and/or whether the trial court abused its' discretion in determining the duration of alimony based on its determination that Wife's earning capacity was "significantly lower" than Husband's when Wife chooses to work less than six months per year and voluntarily earns less than other similarly situated individuals in her field.
>
> III.  Whether the trial court erred in failing to permit husband to retrieve personal property from the marital residence as part of equitable distribution.

Husband's brief at 9 (footnote omitted).

We begin with the following principles, which govern our review of Husband's issues on appeal:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure.  An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

_____

[2] Although Husband filed his notice of appeal thirty-one days after the order appealed from, it is timely because the thirtieth day fell on a court holiday. *See* 1 Pa.C.S. § 1908 ("When any period of time is referred to in any statute, . . . [w]henever the last day of any such period shall fall on . . . any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

***Busse v. Busse***, 921 A.2d 1248, 1257 (Pa.Super. 2007) (citation omitted).

> This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.
>
> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

***Carney v. Carney***, 167 A.3d 127, 131 (Pa.Super. 2017) (cleaned up).

Husband first argues the trial court erred by failing to require Wife to pay the mortgage while residing in the marital residence. ***See*** Husband's brief at 20. The relevant portion of the distribution order provided as follows:

1. Wife shall retain the ownership and possession of the marital residence.

    a. In the event Wife realizes proceeds from a future sale of the residence, Wife shall provide 50% of the net proceeds, not to exceed $49,000, to Husband. The amount payable to Husband shall not be reduced due to any lien that attaches to the residence after the date of the divorce decree, nor shall it be reduced for any remaining balance of the IRS debt assigned to Wife herein.

    b. Each party shall be liable for 50% of any personal liability for marital mortgages and other liens, discussed in this Opinion and Order, not satisfied at the time of sale or foreclosure of the residence.

      c. Husband shall, within sixty (60) days of the date of this Order, deliver to Wife a Quitclaim deed releasing his ownership interest in the former marital residence to Wife. Wife shall prepare the deed for Husband to execute and provide the same to Husband within thirty (30) days of the date of this Order. Wife shall pay all costs for the recording of the deed.

Trial Court Opinion and Order, 10/12/21, at 16. The order did not explicitly address mortgage payments. However, in its Rule 1925(a) opinion, the trial court clarified that "[i]t was not [its] intent . . . for [Husband] to make payments on the mortgage **and** pay alimony to [Wife]." Rule 1925(a) Opinion, 1/4/22, at 2 (emphasis in original). In other words, the trial court expected the order requiring Husband to pay the mortgage in lieu of alimony *pendente lite* to expire upon the filing of the divorce decree. Thereafter, Husband would pay Wife alimony and Wife would make the mortgage payments on the marital residence. *Id*. As such, the trial court contends there was no error.

      Wife agrees with the assessment of the trial court. She notes that Husband has not made any mortgage payments since the entry of the divorce decree. Instead, Wife has been paying the first mortgage. *See* Wife's brief at 18-20. Nonetheless, Husband believes he is not sufficiently protected:

      [I]n the absence of a court order requiring Wife to pay the mortgage on the marital residence in which she resides, Husband lacks a remedy in the event Wife does not pay the mortgage, on which his name still appears. It is inequitable to give Wife sole control over whether the mortgage becomes delinquent, causing harm to Husband's credit and impacting his ability to access credit in the future. Moreover, by not requiring Wife to hold Husband harmless from any late or missed payments following the date of

the divorce decrees, the trial court enables Wife to increase the amount of debt for which both parties are liable in the event of a foreclosure. In addition, by requiring Husband to relinquish any ownership interest in the residence, Wife has full control over whether the home is sold and at what price.

The remedy sought by Husband is simple – require Wife to pay the [first] mortgage so long as she owns the marital residence and hold Husband harmless from any late fees or missed payments on the [first] mortgage following the date of the divorce decree or list the residence for sale.

Husband's brief at 23-24.

Wife counters that Husband did not object to the court's failure to order either party to make payments on the outstanding judgments against the marital residence, which would reduce the significant debt against it. *See* Wife's brief at 19. Moreover, she contends that while Husband claims the lack of an order requiring Wife to pay the first mortgage hurts his credit, he was nonetheless able to purchase a new home with his girlfriend and continues to "ignore. . . the other joint mortgages which they both defaulted on and [which] he is making no attempt to remedy." *Id*. at 19-20.

There is no dispute that the court intended Wife to be solely responsible for the mortgage payments following the entry of the divorce decree. Husband understandably wants to delay his liability for the outstanding judgments by preventing foreclosure on the marital residence. However, beyond referencing the trial court's equitable powers, generally, he has not cited any case law in support of his contention that he must be protected against foreclosure or the accrual of any additional interest or penalties for Wife's potential non-payment

on the first mortgage. Having failed to provide a citation to any legal authority in support of his argument, the issue is waived. *See Kent v. Kent*, 16 A.3d 1158, 1164-65 (Pa.Super. 2011).

Even if not waived, should Wife fail to make payments, the marital residence would be subject to foreclosure and Husband would "be liable for 50% of any personal liability for marital mortgages and other liens, discussed in th[e court's] Opinion and Order, not satisfied at the time of sale or foreclosure of the residence." Trial Court Opinion and Order, 10/12/21, at 16. Upon review of the certified record and the entirety of the distribution scheme, we conclude that such a result is not inequitable. Husband has not established by clear and convincing evidence that the trial court abused its discretion by granting Wife the authority to decide when to sell the marital residence or whether it will be subject to foreclosure. Accordingly, Husband is not entitled to relief on this claim.

Husband next takes issue with the court's alimony award.[3] *See* Husband's brief at 25. We are guided by the following principles:

> Our standard of review over an alimony award is an abuse of discretion.
>
> . . . [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon

---

[3] While Husband ostensibly challenges the court's determination as to the duration of the alimony award, *see* Husband's brief at 9, 25, he presents no argument in support thereof. Therefore, we do not address this argument.

reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a **secondary remedy** and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Gates v. Gates*, 933 A.2d 102, 106 (Pa.Super. 2007) (cleaned up; emphasis in original). The Divorce Code provides the following guidance in relation to an award of alimony:

**(a) General rule.--**Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

**(b) Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

**(c) Duration.--**The court in ordering alimony shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances.

**(d) Statement of reasons.--**In an order made under this section, the court shall set forth the reason for its denial or award of alimony and the amount thereof.

**(e) Modification and termination.--**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made.  Any further order shall apply only to payments accruing subsequent to the petition for the requested relief.  Remarriage of the party receiving alimony shall terminate the award of alimony.

**(f) Status of agreement to pay alimony.--**Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, the agreement shall constitute the order of the court and may be enforced as provided in section 3703 (relating to enforcement of arrearages).

23 Pa.C.S. § 3701.

In its distribution order, the trial court detailed its findings with respect to each factor.[4]  ***See*** Trial Court Opinion and Order, 10/12/21, at 7-10.  In response to Husband's appeal, the court offered the following in support of its alimony award:

> [Husband] has been employed at SCI-Rockview as a corrections officer for twenty-five (25) years.  [Husband's] income is dependent on the amount of overtime he is able to obtain.  In 2020, [Husband's] gross income was $86,710.51.  In 2019, [Husband's] gross income was $91,736.67. In 2018, [Husband's] gross income was $95,642.  [Wife] is a traveling radiology technician.  [Wife's] income is dependent on the contract she is able to obtain.  [Wife] testified that the contracts are typically three (3) months in length and range from $14 to $20 per hour.  In 2020, [Wife's] gross income was $18,379.  In 2019, [Wife's] gross income was $24,000.  In 2018, [Wife's] gross income was $24,004.

_____

[4] We note that the trial court erroneously stated that the parties did not have a child together.  ***See*** Trial Court Opinion and Order, 10/12/21, at 8-9. However, as that child had reached the age of majority prior to the separation, this misstatement did not impact the court's analysis of the alimony factors.

The [c]ourt rejects [Husband's] repeated claims that [Wife] "chooses" to work less than six (6) months per year. As stated, [Wife] testified that her contracts are typically three (3) months in length. [Wife] testified that there are brief periods of time in between her contracts due to the administrative process with her company and that it is not possible to begin a new contract immediately after finishing the prior one. The [c]ourt also rejects [Husband's] claims that [Wife] "voluntarily chooses" to earn less than other similarly situated individuals in her field. Considerable testimony was presented to this [c]ourt regarding the struggles [Wife] faces as a sixty-one[-]year[-]old woman trying to obtain lucrative contracts in a field dominated by individuals freshly out of technical school. Further, [Wife] testified that she is ineligible for the best radiology technician positions because they are given to individuals recently out of technical school who interned with the company during their mandated externship. [Wife] agreed with [Husband's] assertion that out-of-state contracts are more lucrative than in-state contracts. However, [Wife] testified that due to the pending litigation in Pennsylvania she has been unable to accept contracts out-of-state because it would have impacted her ability to appear before this [c]ourt. The [c]ourt notes [Husband's] argument that [Wife] earns less is based on a [G]oogle search of radiology technician positions throughout Pennsylvania. The [c]ourt does not find such a search indicative of any misbehavior on behalf of [Wife] and finds her testimony regarding the struggles she faces obtaining lucrative employment to be credible.

Rule 1925(a) Opinion, 1/4/22, at 2-3.

On appeal, Husband argues that Wife "has voluntarily chosen not to work to her full earning capacity" and the trial court's rejection of that argument is belied by the record. *See* Husband's brief at 28-29. He maintains that "Wife is capable of earning significantly more than she does, not only by working a full twelve months each year but also by choosing higher paying contracts than she has during the parties' separation and pendency of this divorce." *Id*. at 36.

We disagree. The court's credibility determinations and conclusions are supported by the certified record. Thus, we affirm as to this issue on the basis of the above-stated analysis of the trial court opinion. ***See*** Rule 1925(a) Opinion, 1/4/22, at 2-3.

Finally, Husband argues that the trial court erred in refusing to permit him to retrieve personal property from the marital residence. ***See*** Husband's brief at 37. The trial court concluded that it did not err because it was "unable to find where such a request was ever made by [Husband]." Rule 1925(a) Opinion, 1/4/22, at 4. Husband, however, directs us to the testimony from the hearing where he made this request. ***See*** Husband's brief at 37. Specifically, he points to the following exchange:

[Husband's Attorney]: And so was there personal property that remained in the house after you left in 2018?

[Husband]: Yes. Yes.

[Husband's Attorney]: What type of personal property remained?

[Husband]: I pretty much walked out of the house with those items. I left everything for her. I started over. I mean, I left the furniture. I left electronics. I just – I wanted – I would rather her have that stuff and then I just – I would start over and that's what I did.

[Husband's Attorney]: Okay. Did you retrieve all of your personal property?

[Husband]: No. There are some things that are still personal in the house that I just haven't had an opportunity yet to –

- 12 -

[Husband's Attorney]: What are those things?

[Husband]: Just old photos, some keepsakes. I would like to have things like that.

[Husband's Attorney]: Where were they?

[Husband]: They were I think in the bedroom closet. We kept things in totes.

N.T., 6/10/21, at 58-59.

Wife contends that this testimony was insufficient to constitute a request for return of property because Husband did not describe the items with enough specificity for Wife to determine which items he was referencing. *See* Wife's brief at 38. Additionally, she noted that Husband's post-hearing brief did not include a request for return of personal property. *Id*. at 39.

Insofar as the trial court found no merit to this issue because it believed Husband had not requested the return of personal property, that determination is belied by the record and was in error. However, whether the request was sufficiently specific to warrant relief is a determination to be made in the first instance by the trial court. Accordingly, we remand this issue to the trial court for it to consider Husband's request for the return of his photographs and keepsakes that were kept in the bedroom closet.

Based on the foregoing, we affirm the distribution order of the trial court and remand for a determination of whether Husband is entitled to the return of certain personal property.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/2/2022